**Affirmed as Modified and Memorandum Opinion filed November 3, 2011**



In The

# Fourteenth Court of Appeals

### NO. 14-09-00495-CV

## MARY RIGGINS, Appellant

### V.

## RONALD E. HILL, LINDA C. HILL, WEST COLUMBIA PLAZA LTD. AND LUCKY LINDY DEVELOPMENT, Appellees

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 35931**

## MEMORANDUM OPINION

Appellant Mary Riggins appeals the grant of summary judgment in favor of the appellees, Ronald E. Hill, Linda C. Hill, West Columbia Plaza Ltd., and Lucky Lindy Development, ordering the enforcement of a Rule 11 settlement agreement. Riggins raises eight issues, contending the trial court erred or abused its discretion in (1) refusing to lift an order of abatement; (2) treating the parties differently regarding rulings on summary judgment motions in light of the abatement order; (3) failing to enter Riggins's requested motion for enforcement; (4) granting the appellees' enforcement of the Rule 11 agreement, when consent had been withdrawn; (5) failing and refusing to enter a default judgment against Angela Stewart; (6) enforcing the Rule 11 agreement as a contract

when the requisite mental capacity was lacking; (7) granting the appellees prospective attorney's fees in the event that Riggins sought an appeal; and (8) granting summary judgment on the affirmative defense of release. We affirm as modified.

I

Mary Riggins originally sued the appellees, Angela Stewart, and others,[1] alleging that she was denied appropriate accommodations on the basis of her handicap or disabling condition while she was a tenant in appellees' apartment complex, the West Columbia Plaza Apartments. Specifically, Riggins alleges that in February 2003, her physician sent a notice to the apartment complex stating that she needed a downstairs apartment because she had gout and surgery on both knees. Riggins claims that she was denied her requested accommodations, which resulted in her falling down the stairs on June 3, 2005, injuring her knees and back.

Riggins also alleges that Angela Stewart was the manager of the apartment complex at the time of her fall, and that certain actions of Angela Stewart were made with the intent of targeting her for eviction. As a result, Riggins alleged retaliatory eviction, violations of the Fair Housing Act, negligence, and various other causes of action against the appellees and the other defendants.

In August 2006, the trial court granted a motion for abatement after Riggins's counsel represented during a hearing that Riggins was "substantially unable to assist [her] in this case," and explained that Riggins was medicated, missed almost every appointment counsel made with her, and was unable to provide information or documents to counsel. The trial court temporarily abated the case until ten days from the date the trial court, Riggins's counsel, and the appellees' counsel received a letter from Riggins's physician indicating that Riggins was capable of assisting her attorney with the prosecution of her lawsuit.

---

[1] The other defendants, Patrick Hennessey, Janet D. Hennessey, and Red River Development Corporation, moved for and were granted a summary judgment in their favor and are not parties to this appeal.

2

Shortly after that, Riggins moved to enforce an alleged Rule 11 agreement and motion to set aside the abatement. Riggins alleged that a January 25, 2008 letter with interlineations by Riggins' counsel and a fax cover sheet of the same date constituted a settlement agreement. The appellees' counsel denied there was ever a Rule 11 agreement to settle, pointing to the handwritten terms added by Riggins's counsel, to which he never agreed. The trial court found there was no Rule 11 agreement to settle and signed an order denying Riggins's motions.

Several months later, the parties executed an agreement to settle, dated May 27, 2008. Because of the allegations concerning Riggins's mental condition, the appellees also requested that the trial court appoint a guardian ad litem. On June 11, 2008, the trial court agreed to this request and appointed a guardian ad litem.

On September 30, 2008, Riggins filed a motion for a no-answer default judgment as to Angela Stewart. The trial court held a hearing on the motion the same day it was filed and received testimony from Riggins concerning her alleged damages, but did not sign a judgment that day.[2]

In October 2008, Riggins's counsel formally notified the appellees' counsel that Riggins was withdrawing her agreement to settle. The appellees moved for leave to file (1) a motion to enforce settlement agreement, (2) a counterclaim for breach of contract, and (3) a motion for summary judgment, with the motion to enforce and counterclaim. The trial court granted the motion for leave to file the motions and counterclaim, and accepted the motion to enforce settlement agreement and counterclaim already on file. The appellees then filed a separate motion for summary judgment requesting specific performance of the May 27 Rule 11 agreement and damages.

---

[2] At the hearing, Riggins testified to damages of close to $280,000. Although the appellees' counsel was identified as appearing in the reporter's record of the default judgment hearing, the record does not reflect any recorded comments, statements, or cross-examination by the appellees' counsel. Moreover, Riggins' hand-written motion did not indicate that a copy was forwarded to the appellees. And, at the November hearing on appellees' motion for summary judgment, the appellees' counsel indicated that he was unaware of the default-judgment proceeding and objected that he was not provided with a copy of the motion as required under Rule 21 of Texas Rules of Civil Procedure.

In November 2008, the trial court held a hearing on the appellees' counterclaim for breach of contract and motion for summary judgment. At the hearing, the trial court announced that it would not sign the order for default judgment against Angela Stewart. On February 2, 2009, the trial court signed an order granting the appellees' motion for summary judgment. Riggins appeals from this order.

## II

In her first issue, Riggins contends that the trial court abused its discretion in refusing to lift the abatement order, which was entered as a consequence of Riggins's inability to assist her counsel and thereby complete discovery. The written order signed on October 10, 2006, provides in part:

> (2) The case is completely abated including the application of prejudgment interest, if any, until ten (10) days from the date the Court, Plaintiff's counsel or defense counsel all receive an anticipated letter from Plaintiff's physician indicating Plaintiff is capable of adequately assisting her counsel with the prosecution of this suit including without limitation presenting for deposition and answering written discovery, all with assistance of counsel;
>
> . . .
>
> (4) The hearing on Plaintiff's Motion for Summary Judgment set by Plaintiff for October 17, 2006 at 1:00 p.m. is cancelled.

Riggins contends that the abatement order precluded her ability to obtain discovery or to move forward with her motion for summary judgment. Further, Riggins asserts that the trial court's order effectively precluded her from engaging in discovery before the appellees completed their discovery. She points to the following provision of the docket-control order:

> There will be no discovery propounded upon any Defendant by Plaintiff until after Plaintiff has fully responded to the written discovery propounded to Plaintiff as of May 10, 2006 and the Plaintiff's deposition has been completed. Plaintiff's deposition will not be taken until she has been released by her physician to be in competent mental and physical condition to present herself for deposition represented by counsel. . . . Plaintiff's deposition will be completed within 22 days after her physician releases her for deposition.

Riggins contends that, among other things, her deposition testimony was not needed to complete discovery because she had testified during the county-court-at-law trial concerning her eviction, damages, and fall, and the appellees could have used this previous testimony in lieu of deposition, but the trial court never ruled on her request.

In response, the appellees contend the order of abatement is not a final, appealable judgment. *See Harper v. Welchem, Inc.*, 799 S.W.2d 492, 495–96 (Tex. App.—Houston [14th Dist.] 1990, no writ) (holding that an order that merely sustains a plea in abatement is interlocutory and not appealable). But this argument presumes Riggins is complaining about an ongoing abatement order. We understand Riggins's argument to be that the trial court failed to lift the abatement order at her request, not that the trial court entered it in the first place and never lifted it. Moreover, the record shows that the abatement order was lifted before the trial court entertained the appellees' motion for summary judgment and signed a final judgment.

Indeed, although Riggins contends the trial court entered the abatement order sua sponte, the record shows that, at the August 2006 hearing, Riggins's counsel represented that Riggins was "substantially unable to assist [her] in this case" due to her emotional issues. When the trial court inquired whether counsel wanted to abate the case while these issues were being resolved, Riggins's counsel responded, "I see that as the only viable solution at this time." [3] The appellees did not oppose the motion. On October 10, 2006, the trial court signed an order reflecting that it had "considered an extemporaneous Motion for Abatement by plaintiff's attorney" and granted the abatement until ten days after the court and parties received a letter from Riggins's physician indicating that Riggins was "capable of adequately assisting her counsel with the prosecution of this suit including without limitation presenting for deposition and answering written discovery" with counsel's assistance.

---

[3] Thus, to the extent Riggins may be contending the trial court abused its discretion in granting the abatement order, Riggins invited any error because she agreed to the order and therefore may not complain about it on appeal. *See Metzger v. Sebek*, 892 S.W.2d 20, 42 (Tex. App.—Houston [1st Dist.] 1994, writ denied) ("A party cannot encourage the court to take a particular action and then complain on appeal that the court erred by taking it.").

In November 2007, Riggins's psychiatrist forwarded a letter in which he opined that Riggins would be able to participate in mediation and was "currently capable of providing her deposition." Even after this letter was provided, however, Riggins's counsel continued to maintain that Riggins was not able to be deposed. For example, in a hearing in January 2008, Riggins's counsel stated that she did not think that Riggins "can actually give her deposition." At the same time, however, Riggins's counsel sought to move for summary judgment. Appellees' counsel maintained, and the trial court agreed, that once Riggins was able, appellees were entitled to take Riggins's deposition before the court considered Riggins's summary judgment motion or the case proceeded to trial. The trial court stated that the abatement would continue until either Riggins could be presented for deposition or a guardianship was filed on her behalf, and the court refused to lift the abatement or entertain Riggins's summary-judgment motion at that time.

In early October 2008, the appellees filed the May 27 letter with the court. Shortly after that, the appellees filed their "Motion for Leave to File Motion to Enforce Settlement Agreement and Counterclaim for Breach of Contract and Motion for Summary Judgment" and "Motion to Enforce Settlement Agreement and Counterclaim for Breach of Contract" in which they sought "permission and leave of Court from the Court's prior Orders" to file their motions and counterclaim. The trial court granted this motion by order dated October 31, 2008, effectively lifting the abatement. That same day, the appellees served Riggins with their motion for summary judgment. The trial court signed the final judgment granting the appellees' motion for summary judgment and motion to enforce settlement agreement on February 2, 2009.

Thus, the record shows that the abatement order was lifted before the trial court granted the appellees' motion for summary judgment and signed the final judgment. For this reason, we do not consider the abatement order to be a continuing, interlocutory order over which we have no jurisdiction. Instead, we view this issue as a complaint that the trial court failed to lift the abatement order when Riggins requested it. We review the court's orders granting or denying abatement for abuse of discretion. *Tex. Mut. Ins. Co v.*

6

*Sonic Sys. Int'l, Inc.*, 214 S.W.3d 469, 479 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). To prevail on this issue, Riggins must demonstrate not only that the trial court abused its discretion, but also that the alleged abuse of discretion probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a).

Riggins maintains that the continued abatement prevented her from conducting discovery, pursuing a motion for summary judgment, and reaching a satisfactory resolution of the lawsuit. The record reflects, however, that Riggins sought to pursue her discovery and present her motion for summary judgment before allowing the appellees to depose her concerning her claims against them. The trial court abated the case until such time as Riggins could assist in the prosecution of her case, including giving her deposition and answering discovery. The trial court's orders demonstrate a reasonable attempt to balance Riggins's emotional and other problems with the appellees' need for meaningful discovery, including taking the plaintiff's deposition. We conclude that, on this record, the trial court did not abuse its discretion in refusing to lift the abatement order when Riggins requested that it do so. Further, although Riggins contends her deposition was unnecessary because the appellees could have looked to the transcript from the forcible entry and detainer lawsuit in the county court for the factual details of her claims, Riggins has made no showing that the transcript would have adequately substituted for her deposition or that she could not otherwise be required to appear for deposition in her own lawsuit before proceeding with her discovery and summary-judgment motion.

Because Riggins has failed to demonstrate reversible error by the trial court, we overrule her first issue.

### III

In her second issue, Riggins contends that the trial court treated the parties differently regarding the parties' summary-judgment motions in light of the abatement order. Specifically, Riggins complains that because the appellees objected to the trial court entertaining Riggins's motion for summary judgment due to the abatement order

7

that was in effect, it was an abuse of discretion for the trial court to entertain the appellees' motion for summary judgment seeking to enforce a settlement, "given that the abatement order had not been lifted." Riggins asserts, in a cursory manner, that the trial court's actions violated the Fourteenth Amendment of the United States Constitution and the equal-protection and equal-rights provisions of the Texas Constitution. But as discussed in Riggins' first issue, the trial court did lift the abatement order before ruling on the appellees' motions. Therefore, the trial court did not engage in disparate treatment as Riggins suggests. We overrule her second issue.

## IV

In her third issue, Riggins contends the trial court abused its discretion by failing to enter Riggins's requested motion for enforcement of a purported Rule 11 settlement agreement dated January 25, 2008. Riggins cites *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995), for the proposition that a series of correspondence was sufficient to constitute an agreement in writing satisfying Rule 11. Riggins further contends that, because no basis existed for the court's failure to enforce the alleged settlement agreement, the trial court had a ministerial duty to enforce the agreement. *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 91 (Tex. 1996). In response, the appellees contend Riggins' purported agreement fails to satisfy the procedural and substantive requirements of Rule 11.

Rule 11 of the Texas Rules of Civil Procedure, titled "Agreements to be in Writing," provides:

> Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

TEX. R. CIV. P. 11. An agreement satisfies the requirements of Rule 11 if it is (1) in writing, (2) signed, and (3) filed with the papers as part of the record.[4] Tex. R. Civ. P. 11;

---

[4] Among other things, the appellees complain that the January 25 document fails to satisfy Rule 11's requirements because it was not "filed with the papers as part of the record." The clerk's record does

8

*Padilla*, 907 S.W.2d at 459. To satisfy the "in writing" component of Rule 11, the contract principles that are used in determining whether a "writing" satisfies the statute of frauds apply equally to Rule 11 agreements. *See Padilla*, 907 S.W.2d at 460. Thus, "there must be a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony." *Id*. (quoting *Cohen v. McCutchin,* 565 S.W.2d 230, 232 (Tex. 1978)). The written memorandum, however, need not be contained in one document. *Id*.

The document Riggins appears to rely on is a letter dated January 25, 2008, from the appellees' counsel to Riggins, which begins as follows: "This letter will confirm an agreement of the parties. Please sign below and return to me today if this accurately sets forth our agreement." Riggins asserts that "[a] few changes were noted to the agreement," she signed it, and then faxed it back to the appellees' counsel. The document reflects that the changes appear to relate to the existence of any outstanding liens and the addition of a requirement that appellees keep certain details of Riggins's tenancy confidential. The document does not reflect, however, that the appellees' counsel agreed to, initialed, or otherwise approved of the additions. Moreover, at the March 7 hearing on Riggins's motion to enforce, the appellees' counsel adamantly denied the parties had a Rule 11 agreement and pointed out that there was no document showing that he had agreed to the additional terms. The trial court denied the motion to enforce.

Although Riggins relies on *Padilla*, we find that case distinguishable. In *Padilla,* the plaintiffs' attorney, Steidley, made a demand for policy limits on April 10, and required payment by 5:00 on April 23. 907 S.W.2d at 456. After trying unsuccessfully to contact Steidley by the settlement date, the insurance adjuster, Bradshaw, faxed a letter

not include any exhibits to Riggins' motion to enforce. Instead, the record reflects a notation that the pleadings and exhibits from the hearing on March 7, 2008, were "sealed by the court." Riggins contends that she submitted the documents she relies on at the hearing, but they are not a part of the record. Riggins also states that inaccuracies in the court reporter's preparation of the record were the subject of a contempt hearing against the court reporter and the full impact of these inaccuracies was not known until the preparation of her brief. In any event, we will assume for purposes of argument that a copy of the January 25 document containing Riggins' counsel's interlineations and additions was filed with the court.

on April 23 confirming the settlement agreement and noting that the "only thing holding up resolution of this is the hospital lien." *Id.* That same day, Steidley responded that "this letter will confirm that the above referenced matter has been settled," and "[T]his office will [agree] to take care of the lien . . . ." *Id.* Bradshaw received Steidley's confirmation on the morning of April 24, and defendant's attorney, Chandler, tendered the checks a week later. *Id.* However, Steidley refused to accept the checks and claimed that the defendant had not timely accepted the April 10 offer. *Id.* at 456–57. The supreme court held that the writings constituted a binding settlement agreement, reasoning that, even though payment had not been tendered by the settlement deadline, Steidley's confirmation that "the above referenced matter has been settled" indicated that Steidley had agreed to a modification of the terms of acceptance set out in the original letter. *Id.* at 460. Further, all the material terms of the agreement—Padilla's agreement to pay $40,000 in settlement of all claims and the LaFrances' agreement to pay the hospital lien out of those proceeds—were reflected in the series of letters. *Id.* at 460–61.

Unlike in *Padilla*, there is no indication that the appellees confirmed their agreement to Riggins's modification of the terms of the original letter or that the modifications were not material. Indeed, at the March 7 hearing, Riggins's counsel stated that the issue concerning the disclosure of Riggins's information was preventing the parties from moving forward with the settlement. And, in her motion to enforce, she asserted that "[t]he parties can not agree regarding terms of confidentiality to be afforded [Riggins] regarding her tenancy" and acknowledged that the provision she added "alters the terms of settlement." Thus, there was no written memorandum "complete within itself in every material detail" and which contained all of the essential elements of the agreement. *See id.* at 460. On this record, the trial court did not abuse its discretion in determining that the January 25 letter with Riggins' counsel's additions did not constitute a valid Rule 11 agreement.

V

In her fourth, sixth, and eighth issues, Riggins contends that the trial court abused its discretion by enforcing the appellees' May 27 Rule 11 agreement when consent had been withdrawn, enforcing the Rule 11 agreement as a contract, and granting summary judgment on the affirmative defense of release. Within these issues, she also contends that the motion for summary judgment was untimely and she lacked the requisite mental capacity to enter into a contract. Because these issues are interrelated, we address them together as necessary to resolve the appeal.

A

We begin with Riggins' assertion that the appellees' motions were untimely. Specifically, she contends that the trial court granted the motion for leave to file the appellees' motion to enforce settlement and motion for summary judgment on October 31 and held a hearing on the appellees' motion to enforce settlement agreement and motion for summary judgment on November 21, 2008, denying her the three days notice afforded by 166a of the Texas Rules of Civil Procedure and the "mailbox rule." *See Lewis v. Blake*, 876 S.W.2d 314, 315 (Tex. 1994) (holding that when motion for summary judgment is served by mail, three days are added to the twenty-one-day notice period of the hearing prescribed by Rule 166a(c)). Riggins is correct that the trial court granted the appellees' motion for leave to file its requested motions and counterclaim on October 31, 2008, and the appellees filed and served by mail their motion for summary judgment the same day. But the hearing on the motion for summary judgment was held on November 25, not November 21 as Riggins asserts. Therefore, the hearing on the appellees' motion for summary judgment was not untimely.

B

We turn next to Riggins' complaint that the trial court abused its discretion by granting the appellees' motion to enforce the settlement agreement and the motion for summary judgment because Riggins had withdrawn her consent. Riggins again relies on *Padilla* and other cases for the propositions that consent must exist at the time a judgment

11

is rendered and a party has the right to revoke its consent to a Rule 11 agreement at any time before the rendition of judgment. *See, e.g.*, *Padilla*, 907 S.W.2d at 460; *ExxonMobil Corp. v. Valence Operating Co*, 174 S.W.3d 303, 309 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Riggins contends she withdrew her consent to the settlement in two letters, in addition to a formal notice that she rejected the settlement offer, which was filed and served on the appellees on October 24, 2008, before the trial court signed the final judgment. Riggins contends that because consent was withdrawn, the trial court's judgment is void, and the case should be remanded for a new trial. *See Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983); *Samples Exterminators v. Samples*, 640 S.W.2d 873, 874–75 (Tex. 1982) (per curiam).

Riggins's argument misapprehends the nature of the proceeding below. Although a trial court cannot render a valid agreed judgment absent a party's consent at the time it is rendered, a trial court may, after proper notice and hearing, enforce a settlement agreement that complies with Rule 11 even though one party no longer consents to the terms of the settlement. *See Padilla*, 907 S.W.2d at 461; *ExxonMobil Corp.*, 174 S.W.3d at 309. In such a case, the opposing party may seek to enforce the agreement under contract law. *Mantas*, 925 S.W.2d at 658; *Padilla*, 907 S.W.2d at 461. A claim to enforce a disputed settlement agreement may be raised through an amended pleading or counterclaim asserting breach of contract. *Padilla*, 907 S.W.2d at 462.

The party seeking enforcement must pursue a separate breach-of-contract claim, however, which is subject to the normal rules of pleading and proof. *Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996); *Padilla*, 907 S.W.2d at 462; *see also Quintero*, 654 S.W.2d at 444. After proper pleading and proof, a party may obtain a judgment enforcing the contract under the Texas Rules of Civil Procedure through summary-judgment proceedings, if no fact issue exists, and by non-jury trial or jury trial, if a fact issue exists. *Davis v. Wickham*, 917 S.W.2d 414, 416 (Tex. App.—Houston [14th Dist.] 1996, no pet.). A trial court may render judgment on a settlement agreement

12

when one of the parties contests his consent to be bound only by following one of these procedural vehicles. *Id.* at 416–17.

In the present case, as discussed above, the appellees moved for leave to file three documents: a motion to enforce, a counterclaim for breach of contract, and a motion for summary judgment. The motion for leave included the motion to enforce and the counterclaim, and the motion for summary judgment was filed separately after the court granted the motion for leave. As explained above, the motion for summary judgment, along with the motion to enforce, was timely heard. The court's final judgment recites the following: "The Court having heard the argument of counsel concerning the Summary Judgment is of the opinion there is no genuine issue as to any material facts and that Defendants' Motion for Summary Judgment/Motion to Enforce the Settlement Agreement is herein GRANTED." The record shows that the appellees properly sought to enforce the settlement agreement after Riggins withdrew consent through a counterclaim and motion for summary judgment asserting breach of contract, and the trial court, finding no genuine issue of material fact, granted the motion for summary judgment. Therefore, the trial court did not abuse its discretion by rendering an agreed judgment after Riggins withdrew consent to the settlement. We overrule Riggins's fourth issue.

## C

In her sixth issue, apparently recognizing the procedural posture of the case below, Riggins contends the trial court abused its discretion by enforcing the Rule 11 agreement as a contract. Riggins contends that (1) she lacked the requisite mental capacity to sign the agreement, and (2) the appellees failed to establish breach of contract as a matter of law.

### 1

As an initial matter, Riggins contends that she lacked the mental capacity to enter into a binding Rule 11 settlement agreement based on the appointment of the guardian ad litem. Riggins did not raise this issue in her response to the motion for summary judgment, but asserted it in a motion for new trial. As Riggins points out, in the May 27

13

Rule 11 agreement, both parties agreed to the appointment of a guardian ad litem by the court "to review the proposed settlement on behalf of [Riggins]" and advise the court whether the settlement should be approved. At the summary-judgment hearing, the guardian ad litem stated that she believed the amount of the settlement was fair to the client and recommended that the court approve the settlement. Riggins contends that, because the trial court appointed the guardian ad litem, the court necessarily found that Riggins was incapacitated or incompetent and lacked the authority to enter into a Rule 11 agreement.

Generally, the law presumes that a person possesses sufficient mental capacity to enter into a binding contract. *Estate of Galland v. Rosenberg*, 630 S.W.2d 294, 297 (Tex. Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Mere nervous tension, anxiety or personal problems do not amount to mental incapacity sufficient to raise a fact issue to defeat a summary-judgment motion. *Schmaltz, v. Walder*, 566 S.W.2d 81, 84 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.); *see Mandell & Wright v. Thomas*, 441 S.W.2d 841, 845 (Tex. 1969). Further, the party alleging mental incompetence has the burden of proving her contention. *Hall v. Hall*, 352 S.W.2d 765, 767 (Tex. Civ. App.—Houston 1962, no writ). Here, Riggins presented no medical testimony or other evidence of mental incapacity below, and on appeal offers only conclusory statements that are insufficient to invalidate the summary judgment. Further, the record shows that the trial court did not appoint a guardian ad litem sua sponte, but at the appellees' request, consistent with the parties' agreement in the May 27 letter that a guardian ad litem be appointed for the sole purpose of reviewing and approving the settlement on Riggins's behalf.

Moreover, the Rule 11 agreement was signed by Riggins's counsel, not Riggins. The handwritten notation "Reviewed: Mary Riggins" appears below the signature block where her counsel signed, signifying her agreement on Riggins's behalf. The attorney-client relationship is an agency relationship, and the attorney's acts and omissions within the scope of his or her employment are regarded as the client's acts. *Gavenda v. Strata*

*Energy, Inc.,* 705 S.W.2d 690, 693 (Tex. 1986). Thus, an attorney may execute an enforceable Rule 11 agreement on her client's behalf. *See In re R.B.,* 225 S.W.3d 798, 803 (Tex. App.—Fort Worth 2007, no pet.). On these facts, we decline to conclude that Riggins's unsupported assertions concerning her competency to agree to the Rule 11 agreement require the reversal of the trial court's judgment.

2

Turning to the summary-judgment proceedings, Riggins contends that (1) the appellees failed to show how, if at all, Riggins breached the contract; (2) the appellees failed to comply with the rules of civil procedure concerning timely notice; (3) Riggins was not afforded pretrial discovery concerning the breach of contract claim; and (4) there were disputed issues of fact concerning whether it was Riggins or the appellees who actually breached the contract and whether a binding agreement had ever been reached. Riggins also asserts other issues of fact existed.

As previously discussed, however, the record reflects that the appellees filed a counterclaim alleging breach of contract and a motion for summary judgment requesting, among other things, specific performance of the May 27 agreement. In the motion for summary judgment, the appellees recited the terms of the Rule 11 agreement, asserted that Riggins breached the agreement, and requested that the trial court enforce the agreement. *See* Tex. R. Civ. P. 11; *Padilla*, 907 S.W.2d at 462. A hearing on the motion was timely set. Riggins filed both a response and a supplemental response.

Additionally, the summary-judgment evidence attached to the motion for summary judgment established that an enforceable settlement agreement existed as a matter of law. The May 27 letter agreement was in writing, it was signed by both Riggins's counsel and the appellees' counsel, and it was separately filed with the trial court and attached to the motion for summary judgment. Thus, it satisfied the requirements of Rule 11. *See Padilla*, 907 S.W.2d at 461. The appellees also attached Riggins's formal notice of rejection of the settlement offer, which included as attachments two earlier letters informing the appellees' counsel that Riggins was withdrawing her consent to settle and

15

was no longer interesting in settling the case. A breach of contract occurs when a party fails or refuses to perform on a promise. *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 632 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Thus, the appellees demonstrated that the parties had a valid Rule 11 agreement and that Riggins breached the agreement by withdrawing her consent and refusing to perform.

In her brief, Riggins asserts in a conclusory fashion that fact issues existed precluding summary judgment. But Riggins does not cite or refer to her either response or supplemental response for supporting argument or evidence. Riggins's arguments in these responses concern primarily the timeliness of the motion for summary judgment. She also asserts in the summary-judgment responses that the parties had settled the case as reflected in the January 25 letter (which Riggins had earlier unsuccessfully argued constituted a Rule 11 settlement agreement), but continued to have disagreements over the terms of the settlement.[5] Further, although Riggins contends that she was denied pretrial discovery concerning the claim, she does not identify what pretrial discovery she would have sought or what defense it would have supported.

As discussed above, however, the trial court correctly determined that the January 25 letter did not constitute a valid Rule 11 agreement because Riggins added additional, material terms which the appellees did not accept. In contrast, the May 25 letter contains no unilateral revisions by one party and encompasses the material terms of the agreement. As to that agreement, Riggins acknowledges in her responses that she withdrew her consent to settle. Riggins's responses do not raise a fact issue concerning her breach of the agreement. We therefore overrule her sixth issue.

D

In Riggins's eighth issue, she contends the trial court erred in granting summary judgment on the affirmative defense of release. In this issue, she repeats the argument that the Rule 11 agreement was voidable because she lacked the capacity to agree to it.

---

[5] In fact, Riggins' original response to the motion for summary judgment was filed October 24, 2008, several days before the appellees filed their motion for summary judgment. Only Riggins's supplemental response was filed after the appellees filed their motion.

We have already considered and rejected this argument for the reasons explained above. We therefore overrule her eighth issue.

VI

In her fifth issue, Riggins contends that the trial court abused its discretion by failing to enter a default judgment against Angela Stewart. Riggins alleges that although Stewart was served with citation "on or about November 30, 2005," Stewart failed to answer. Riggins further states that Stewart was not represented by the appellees' attorney or any other attorney.

The record reflects that Riggins's counsel filed a handwritten motion for default judgment and presented Riggins to testify concerning her damages on the same day. At the hearing, Riggins testified to damages of close to $280,000.[6] No exhibits were offered. Riggins apparently gave no notice of her motion for default judgment or that the motion would be heard that day to the appellees' counsel. In her brief, Riggins explains that other matters were already set for hearing that day, but the appellees' counsel had indicated to the court that he was not going to appear due to "another legal obligation." Riggins also provided the trial court with a certificate of last known address and nonmilitary affidavit. The trial court listened to Riggins's testimony, but took the matter under advisement and did not sign a judgment that day.

Nearly two months later, on November 25, 2008, at the conclusion of the hearing on the appellees' counterclaim and default judgment, Riggins's counsel approached the court and requested that the default judgment be signed against Stewart. The appellees' counsel responded that he was unaware of the default-judgment proceedings, and objected that Riggins failed to serve notice of her motion to the appellees as required under Rule 21 of the Texas Rules of Civil Procedure. The appellees' counsel also argued that the May 27 Rule 11 agreement included Angela Stewart, because Riggins alleged that Stewart was the manager of the West Columbia Plaza Apartments. The Rule 11

---

[6] We note that Riggins's assertion that she is entitled to a default judgment for roughly this amount based solely on her testimony is inconsistent with her repeated assertion that she was incompetent to enter into any settlement agreements.

17

agreement provides that it "applies to all persons and entities that are in any way related to any of my clients, defendants, herein, their agents, servants, representative and assigns,"[7] and further provides that it would "entirely end all matters asserted or that could have been asserted by your client regarding her residency and all matters related thereto at the West Columbia Apartments regardless of whether it was actually brought in this particular case, including without limitation all complaints and administrative proceedings." The trial court agreed that the Rule 11 agreement encompassed Riggins' claims against Angela Stewart, and so denied the default judgment.

Riggins contends that the trial court abused its discretion in refusing to enter a default judgment because she obtained the default judgment before the trial court ruled on the appellees' motion to enforce the settlement agreement.  We disagree. The operative date is not the date the appellees obtained a judgment enforcing the Rule 11 agreement, but the date the parties executed the Rule 11 settlement agreement—May 27, 2008—which was well before Riggins moved for default judgment against Stewart. *See Coale v. Scott*, 331 S.W.3d 829, 831–32 (Tex. App.—Amarillo 2011, no pet.) (stating that Rule 11 agreement "becomes a contract when executed, not when the trial court attempts to enforce it").  The Rule 11 agreement unambiguously settles the claims Riggins alleged against Stewart. We therefore conclude that the trial court did not abuse its discretion in failing to enter a default judgment against Stewart.

VII

Finally, in her seventh issue, Riggins contends that the trial court abused its discretion by granting the appellees prospective attorney's fees in the event that she sought an appeal.  The trial court's judgment awarded the appellees $3,000 in attorney's fees, $4,000 if Riggins appealed to the court of appeals, and $3,500 if Riggins appealed to the Supreme Court of Texas. Riggins maintains that the trial court's unconditional award of attorney's fees punishes her for taking a successful appeal.  The appellees deny

---

[7] The Rule 11 agreement was filed with the court on October 6, 2008, a few days after the default-judgment hearing. The trial judge's comments indicate that he did not recall seeing the Rule 11 agreement before the November 25 hearing.

that the trial court abused its discretion, but acknowledge that the trial court's judgment may be reformed to reflect that any award of appellate attorney's fees is conditioned upon a successful appeal to this court and the supreme court.

A trial court may not penalize a party for taking a successful appeal. *Hoefker v. Elgohary,* 248 S.W.3d 326, 332 (Tex. App.—Houston [1st Dist.] 2007, no pet.). An award of appellate attorney's fees must be conditioned on the appellant's unsuccessful appeal. *Id.* Therefore, the trial court should have awarded attorney's fees conditioned upon the appellees' success on appeal. *Daugherty v. Jacobs,* 187 S.W.3d 607, 620 (Tex. App.—Houston [14th Dist.] 2006, no pet.). But, an unconditional award of appellate attorney's fees does not require reversal. *Id.* Instead, we may modify the judgment to correct the award. *Id.* We therefore sustain Riggins's seventh issue and modify the trial court's judgment to condition the award of appellate attorney's fees on the appellees' success on appeal.

* * *

We sustain Riggins's seventh issue and modify the trial court's judgment to condition the award of appellate attorney's fees on the appellees' success on appeal. We affirm the judgment as modified.

/s/    Jeffrey V. Brown
Justice

Panel consists of Justices Brown, Boyce, and McCally

19